(63 App. Div. 461.)

DE VEAUX COLLEGE FOR ORPHAN & DESTITUTE CHILDREN v. HIGHLANDS LAND CO.

(Supreme Court, Appellate Division, Fourth Department.  July 23, 1901.)

WILLS—CONSTRUCTION—POWER OF TRUSTEES TO SELL REALTY.

A testator devised realty to trustees to establish a benevolent institute and incorporate.  By a special act of the legislature a corporation was organized with general powers, and the trustees conveyed the devised property to it.  Included in the land were "lots number 33 and 34," which the will provided should constitute the farm and domain of the institution, and on which buildings should be erected.  The testator further provided that other parts of the land should be retained or sold, as the managers might see fit, but it was desired that no sales be made until a reasonable period after incorporation.  The corporation contracted with defendant to sell part of lots 33 and 34, retaining sufficient land for the buildings and farm of the institution.  Held that, the devise of such lots being merely for a specific use, the corporation had the discretionary power to use them for any purpose consistent with the general scheme of the testator, and had power to sell such portions as it might deem advisable to maintain the institution.

Action by the De Veaux College for Orphan and Destitute Children against the Highlands Land Company.  Submitted on an agreed statement of facts, under Code Civ. Proc. § 1279.  Judgment for plaintiff.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

Simon Fleischmann, for plaintiff.
Carl E. Tucker, for defendant.

ADAMS, P. J.  This is a submission of a controversy upon agreed facts, and the sole question presented thereby relates to the power of the plaintiff, a domestic corporation, to convey certain lands situate in the city of Niagara Falls, and to give a good title thereto.  It appears from the stipulated facts that in the year 1852 one Samuel De Veaux, who resided in what was then the village of Niagara Falls, conceived the idea of founding a benevolent institution for the instruction, training, and support of orphan children, and, to carry out this design, he, in his will, which was executed on the 3d day of August, in the year above named, after providing for the payment of certain specific bequests to his wife and others, devised and bequeathed the residue of his estate, both real and personal,

to four trustees, therein named, who were empowered and directed to use the estate thus devised and bequeathed for the "purpose of establishing, founding, and maintaining a benevolent institution to train and support orphan and destitute children, to train them up to industry, to learn them trades and professions, to give them mental and manual and a social and religious education." The will also provided that within five years after the testator's death the trustees named therein, together with such other persons as "they may think best to associate with them (such associates to be communicants of the Protestant Episcopal Church), should incorporate under the general law of this state a benevolent institution for the purposes herein named, or obtain a special act of the legislature for that purpose; and that immediately after such institution is incorporated they convey and transfer to the trustees and managers thereof all the real and personal estate remaining in their hands, after having provided for and invested funds and securities to meet and settle all the items, amounts, and bequests hereinbefore mentioned"; and, in the event that the testamentary trustees failed to comply with the testator's direction as to organization and incorporation, the will further directed that the residuary estate therein referred to should pass to the supervisors of Niagara county, "to be used by them for the purposes herein set forth and intended." Pursuant to this requirement of the will, the trustees therein named associated certain other persons with them, and within the time prescribed procured the passage of a special act of the legislature of this state, in and by which they were duly incorporated under the name of "De Veaux College for Orphan and Destitute Children." Laws 1853, c. 243. This act, which has since been amended from time to time (Laws 1857, c. 385; Laws 1883, c. 295; Laws 1889, c. 44; Laws 1891, c. 158), provides, among other things, that:

"The said corporation shall have perpetual succession and be capable of taking and holding by purchase, gift, grant or devise, any real or personal estate for the purposes aforesaid [i. e. the purposes expressed in the will], but the yearly income of the same and of the property so acquired under the said will, shall not exceed the sum of $15,000; and shall possess the powers and privileges and be subject to the liabilities and provisions contained in the third title of chapter eighteen of the first part of the Revised Statutes, as the same may have been amended, so far as the same may be applicable and not inconsistent with the provisions of this act." Section 1.

The act also provides that the corporation shall be under the management and control of nine trustees, whose powers, including that of perpetuation, are clearly defined. On the 2d day of July following the passage of this act, the trustees named in the will conveyed to the plaintiff all of the real estate devised to them by the will of Judge De Veaux, and the plaintiff thereupon took possession of the property thus conveyed, and has ever since maintained a "benevolent institution" for the purposes set forth in the will. The property thus conveyed consisted of about 2,100 acres of real estate situated in Niagara and Erie counties, of the value of about $95,000, and subsequently personal property of the value of about $40,000 was also transferred to the plaintiff, so that the aggregate value of

the entire property received by the plaintiff from the De Veaux estate was about $135,000. Included in the land conveyed to the plaintiff were two parcels known as "lots number 33 and 34 of the Mile Reserve in the town and county of Niagara," and it was provided in the will of Judge De Veaux that these two lots, embracing about 350 acres of land, should constitute the farm and domain of the institution thereafter to be created, and that the buildings of the institution should be erected, and its business and operations conducted, thereon. The testator also expressed a wish that the premises known as the "Mount Eagle Property" might be retained for the institution, or sold for its benefit, but at a price of not less than $100 per acre; and in the same connection he also declared that, inasmuch as "a considerable part of lot number 35 may hereafter be advantageously sold for village purposes, the residue may be retained as a part of the institution's domain, or sold, as the trustees and managers may think best. But it is desired that no sales be made until a reasonable period after such institution is incorporated." In compliance with these directions, the college buildings have been erected upon lots 33 and 34, and these lots have constituted the "farm and domain of the institution." The Mount Eagle property, and certain other portions of the tract embraced in the deed to the plaintiff, including a considerable portion of lots 33 and 34, have also been sold from time to time, and the avails thereof have been applied to the use and benefit of the institution. Certain strips of lots 33 and 34 have likewise been acquired by condemnation proceedings for railroad and highway purposes; but the plaintiff has at all times retained, and still retains, a sufficient portion of the land embraced in these lots, exclusive of that agreed to be sold to the defendant as hereinafter specified, to afford it ample acreage room and facilities for the farm and domain of its institution. At the time of Judge De Veaux's death, which occurred upon the very day his will was executed, Niagara Falls was a small village, and the lands in question were located outside the corporate limits, and near the village of Suspension Bridge. Since then, however, the two villages have been consolidated into a thriving and populous city, which embraces within its limits lots numbers 33 and 34, some portions of which have been appropriated for city streets, while other portions have been laid out in city lots; and on or about October 5, 1895, the plaintiff entered into an agreement with the defendant for the sale of a strip of land constituting a part of and extending through these two lots for the sum of $18,068, which sum was, and still is, the full market value thereof. The premises thus sold consisted of 17 acres, and by the terms of the contract portions thereof were to be conveyed from time to time within a limited period, as the defendant might require, upon the payment by the latter of a proportionate price of the portion so required. On or about May 1, 1901, the plaintiff tendered to the defendant a warranty deed of a certain portion of the premises thus contracted for, which, under the terms of the contract, the plaintiff was then entitled to convey, and for which it was entitled to receive from the defendant the sum of $159, the

same being a proper proportional amount of the entire purchase price of the 17 acres. Upon making such tender, the plaintiff demanded of the defendant the sum above mentioned, which was refused solely upon the ground that under the will of Judge De Veaux and the subsequent conveyance to the plaintiff the latter is unable to convey a good and marketable title to any of the lands embraced within the contract, and thus we have presented the single question which this court is called upon to determine.

We think it quite apparent that within the true intent and scope of the will of Judge De Veaux, taken in its entirety, a discretionary power was conferred upon the trustees of the corporation to be thereafter created to sell portions of the lands held by it for the purpose of raising the necessary means with which to carry out the object of the testator. Such intention is expressly manifested in the clause which suggests the propriety of disposing of the Mount Eagle property and a considerable part of lot number 35, as well as by still another clause, which expresses the desire that no sales (of real estate) be made until a reasonable period after the incorporation of the institution. But it is insisted that a contrary intent is manifested so far as lots 33 and 34 are concerned, inasmuch as the testator expressly declares that the buildings of the corporation to be thereafter created shall be erected, and the business of the institution conducted, upon these lots. We think that, the most that can be claimed from the language of this particular portion of the will is that it is a declaration by the testator that the premises referred to are devised for a specific use; and, this being the case, it is, in the absence of any condition annexed thereto, ineffectual as a limitation of such use. In other words, the plaintiff, having come into possession of lots 33 and 34 unrestricted as to their use by any express condition, is thereby invested with a discretionary power to use them for any purpose consistent with the general scheme of the testator, including the power to sell such portions thereof as its trustees may deem advisable in order to maintain and support the "benevolent institution" which he had intended by his will to establish. Were it possible to so construe the language of the will in question as to impose a condition, it would necessarily be a condition subsequent; and, as the tendency of such conditions is to defeat estates, the courts are disposed to construe them strictly, and they are frequently relieved against in equity. Woodworth v. Payne, 74 N. Y. 196, 30 Am. Rep. 298; Graves v. Deterling, 120 N. Y. 447, 24 N. E. 655; 2 Story, Eq. Jur. § 1319 et seq. A devise or grant of lands to trustees for a benevolent or charitable use does not create a conditional estate, and, in the absence of any express condition, is not liable to be defeated by either nonuser or alienation. Erwin v. Hurd, 13 Abb. N. C. 91; In re Sellers Chapel M. E. Church (Pa.) 21 Atl. 145, 11 L. R. A. 282. It was held by the supreme court of the United States in Stanley v. Colt, 5 Wall. 119, 18 L. Ed. 502, that whether the words in a devise constitute common-law conditions annexed to an estate, a breach of which, or any one of which, will work a forfeiture, and defeat the devise, or are merely regulations for the management of the

estate, and explanatory of the terms under which it was intended to have it managed, is a matter to be determined not by any particular expressions in the devise, but by the entire will; and, applying this rule to the present case, it seems quite clear that the testator's declaration that lots Nos. 33 and 34 of the Mile Reserve should constitute the farm and domain of the institution he was seeking to establish was but the expression of a desire that certain portions of his estate should be used and managed in a manner most likely to accomplish the object he had in view, and that, when construed in connection with the entire instrument, such declaration indicated no intention upon the part of the testator to impose such use as an absolute condition of the devise. Since the death of the testator the conditions surrounding his estate have greatly changed. Land that was then desirable for farming purposes only has little or no value for such purposes now, and probably the 17 acres sold to the defendant are worth more for building lots than were the entire 350 acres of lots 33 and 34 at the time the will was executed. It is not impossible that it was within the contemplation of the testator that this condition of things might exist in the near future, and that for this very reason he invested his trustees and their associates and successors with very large discretionary powers. As he was a lawyer, he must certainly have known that, if an incorporation was effected under the general laws of this state, as authorized by him, the "benevolent institution" he had in mind would thereby be empowered "to hold, purchase, and convey real and personal estate as the purpose of the corporation shall require, not exceeding the amount limited in its charter" (2 Rev. St. [7th Ed.] p. 1530, § 1, subd. 4); and if he wished to guard against, or in any wise limit, the general powers thus created by statute, he should have protected himself by an express condition (Erwin v. Hurd, supra). The views to which we have given expression seem to us to be in strict accord with well-recognized rules of law, and they are the more readily adopted in the present instance by reason of the fact that, while the sale of the real estate in question will furnish the plaintiff with the means necessary to its continued existence as a charitable institution, it will in no wise impair the usefulness of the remaining portion of lots 33 and 34 for the purposes of a "farm and domain." Our conclusion, therefore, is that the plaintiff is able to convey a good and marketable title to the lands embraced in its contract with the defendant, and that it is, consequently, entitled to a judgment decreeing specific performance of such contract, together with the costs of this action. All concur.